1  Michael D. Mortenson (SBN 247758)
2  michael.mortenson@klgates.com
   Caitlin C. Blanche (SBN 254109)
3  caitlin.blanche@klgates.com
4  K&L GATES LLP
   1 Park Plaza, 12th Floor
5  Irvine, CA  92614
6  Telephone: (949) 253-0900
   Facsimile: (949) 253-0902
7

8  Attorneys for Plaintiffs

9
              UNITED STATES DISTRICT COURT
10
            SOUTHERN DISTRICT OF CALIFORNIA
11

12

13  SEAN LAKE, individually and as          Case No.  3:14-cv-2431-H-NLS
    executor to the ESTATE OF GLEN
14  DOHERTY; KATE QUIGLEY, an               PLAINTIFFS' OPPOSITION TO
    individual; BARBARA DOHERTY, an         DEFENDANTS' MOTION TO
15  individual; GREG DOHERTY, an            DISMISS
    individual,
16
                  Plaintiffs,
17                                          Date:            November 24, 2014
         vs.                                Time:            10:30 a.m.
18                                          Courtroom:       15A
    RUTHERFOORD INTERNATIONAL,              Judge:           Hon. Marilyn L. Huff
19  INC., a Marsh & McLennan Agency LLC,    Magistrate Judge: Hon. Nita L. Stormes
    a Virginia Corporation; RUTHERFOORD
20  FINANCIAL SERVICES, INC., a
    Virginia Corporation, doing business as
21  RUTHERFOORD FINANCIAL &
    INSURANCE SERVICES, INC.; and
22  DOES 1-100, inclusive,

23                Defendants.

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    FACTUAL BACKGROUND AND MATERIAL ALLEGATIONS ....................................... 2

II.   LEGAL STANDARD.............................................................................................. 4

III.  ARGUMENT ...................................................................................................... 5

    A.    An Insurance Broker Can Be Held to a Higher Duty Where Facts Indicate a
        Special Relationship........................................................................................ 5

        1.    Glen Requested a Specific Type of Coverage............................................ 7

        2.    Rutherfoord Held Itself Out as Having Expertise in the Field of Insurance
            Sought by Glen........................................................................................ 7

        3.    Defendants Misrepresented the Nature, Extent, or Scope of Coverage
            Being Offered and Provided..................................................................... 10

    B.    Plaintiffs Have Pled More-Than-Sufficient Facts upon Which Relief Can Be
        Granted......................................................................................................... 11

    C.    Plaintiffs Do Not Oppose Defendants' Motion to Strike Prayer For Attorney Fees 12

IV.   CONCLUSION................................................................................................... 12

**TABLE OF AUTHORITIES**

**Cases**

*American Building Supply Corp. v. Petrocelli Group, Inc.,*
   No. 188, 2012 N.Y. LEXIS 3476 (N.Y. 2012).................................................11

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)............................................................................4

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007)............................................................................4

*Eddy v. Sharp,*
   199 Cal. App. 3d 858 (1988) ..............................................................6

*Eminence Capital, L.L.C. v. Aspeon, Inc.,*
   316 F.3d 1048, (9th Cir. 2003) ..........................................................5

*Fitzpatrick v. Hayes,*
   57 Cal. App. 4th 916 (1997) ..............................................................6

*Free v. Republic Ins. Co.*
   8 Cal. App. 4th 1726 (1992) ..............................................................7

*Hydro-Mill Co., Inc. v. Hayward, Tilton & Rolapp Ins. Associates, Inc.,*
   115 Cal. App. 4th 1145 (2004) .......................................................5, 6

*Kurtz, Richards, Wilson & Co. v. Insurance Communications Marketing Corp.,*
   12 Cal. App. 4th 1249 (1993)........................................................8, 11

*Middlesex Ins. Co. v. Mann,* 124 Cal App 3d 558 (1981) .......................................6

*Paper Savers, Inc. v. Nacsa,*
   51 Cal. App. 4th 1090 (1996).............................................................10

*Peter v. Schumacher Enterprises, Inc.,*
   22 P.3d 481 (Alaska 2001) ................................................................11

*Sadler v. Loomis,*
   776 A.2d 25 (Md. Ct. Spec. App. 2001).............................................6, 8

*Scheuer v. Rhodes,*
   416 U.S. 232 (1974),
   overruled on other grounds by *Davis v. Scherer,* 468 U.S. 183 (1984)..........4

*Westrick v. State Farm Insurance,*
   137 Cal. App. 3d 685 (1982) ...............................................................9

RECYCLED PAPER

1

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

2       Defendants are correct that this case stems from the tragic death of an American

3  hero, Glen Doherty, who died while defending his fellow Americans in Benghazi,

4  Libya, after the U.S. diplomatic post and Central Intelligence Agency ("CIA") Annex

5  were attacked by terrorists.  Prior to his deployment overseas, however, Defendants—

6  who heavily market their "exclusive expertise" in Defense Base Act ("DBA")

7  insurance policies—sold Glen such a policy, as required by the CIA, which Glen

8  believed and understood would provide benefits to his loved ones in the event of his

9  death.  Sadly, it did not.  Only after Glen's death did Glen's family learn that the

10 policy Rutherfoord marketed and sold to Glen was essentially worthless.  This, too, is a

11 tragedy, but it is one that can be rectified.

12      Defendants Rutherfoord International, Inc. and Rutherfoord Financial Services,

13 Inc., dba Rutherfoord Benefit Services (collectively, "Defendants" or "Rutherfoord")

14 bring the instant Motion to Dismiss based on the argument that Plaintiffs' breach of

15 fiduciary duty cause of action is not cognizable in California.  Defendants are wrong;

16 California *does* recognize breach of fiduciary duty as a cause of action in certain

17 circumstances, which Plaintiffs have alleged exist here.  Specifically, Defendants'

18 black-and-white view of the law fails to account for the widely recognized exception

19 where there are facts indicating a "special relationship" between the broker and the

20 insured.  Under such a scenario, courts around the country including in California,

21 have recognized that insurance brokers may held to a higher duty, giving rise to

22 potential liability.

23      Plaintiffs' Complaint as a whole contains more than 28 paragraphs full of facts

24 supporting this "special relationship" between Glen and Rutherfoord, which gives rise

25 to a heightened duty distinct from the broker's duty under a professional negligence

26 standard.  As pled, Plaintiffs' Complaint presents a cognizable claim for breach of

27 fiduciary duty.  Whether such a relationship existed and Defendants are liable for

28 breaching such a duty are questions of fact properly left to the jury.  Accordingly, for

1    the reasons stated herein, Plaintiffs respectfully request that the Court deny

2    Defendants' Motion to Dismiss or, in the alternative, grant leave to amend the

3    Complaint to cure any deficiencies the Court may find.

4    **I.     FACTUAL BACKGROUND AND MATERIAL ALLEGATIONS**

5         Plaintiffs are the executor of the Estate of Glen Doherty and his heirs, including

6    his mother, sister and brother. Compl. at ¶¶ 3-6. In January 2011, Glen Doherty

7    ("Glen"), a former Navy SEAL turned civilian contractor, contracted with the Central

8    Intelligence Agency ("CIA") to perform civilian security work overseas in hazardous

9    areas under combat-like circumstances. *Id.* at ¶ 22. The CIA required Glen to obtain a

10   Defense Base Act insurance policy prior to deploying on each mission overseas. *Id.*

11        Defendants are the exclusive insurance broker for the CIA and United States

12   Department of State ("State Department") for DBA policies. *Id.* at ¶ 13. Defendants

13   heavily market themselves as having "exclusive expertise" in the area of DBA policies,

14   as being "DBA experts," who are "uniquely situated" to assist government contractors

15   serving overseas with their DBA needs. *Id.* at ¶ 15, 21. Defendants even maintain a

16   "DBA Center of Excellence" staffed with "world class staff" to bring its expertise and

17   DBA services into a "one stop shop" for DBA clients. *Id.* at ¶ 17-18. Defendants

18   further tout that because of their exclusive DBA expertise, they are uniquely situated to

19   "identify, mitigate, and transfer risk"; have a "unique ability to identify and fill

20   coverage gaps"; and "provide[] DBA clients with creative program designs,

21   benchmarking data, claims advocacy, and loss control solutions...." *Id.* at ¶ 16, 17.

22        In January 2011, Glen contacted Rutherfoord to obtain a DBA policy. *Id.* at 22.

23   Glen expressed confusion over DBA insurance, but stated that he believed he needed a

24   DBA policy and would like one similar that of his friend, teammate and Rutherfoord

25   client, Tyrone Woods. *Id.* at 23. Glen desired a DBA policy to satisfy the CIA's

26   requirements and also one that, like Tyrone Woods' policy, would cover his loved ones

27   in the event of injury or death. *Id.* Glen referred Defendants to Tyrone's paperwork

28   for guidance as to the benefits he desired. *Id.* at ¶ 24.

1      Some time thereafter, Defendants sold Glen a DBA policy and Glen paid

2  Defendants premiums of $1,480.00 and $3,626.00 in 2011 for the Policy. *Id.* at ¶ 27.

3  At the time he purchased the DBA policy through Rutherfoord, Glen believed and

4  understood that the DBA policy he purchased satisfied his desire to provide benefits to

5  him in the event of injury while working overseas, and would pay benefits to his loved

6  ones upon his death while working overseas. *Id.* at ¶ 28.  At no point did any member,

7  agent, or employee acting on behalf of Rutherfoord discuss the details of the DBA

8  policy, including any potential death benefits or lack thereof, with Glen.  Rather, Glen

9  was led to believe that this policy was appropriate for him and his loved ones and

10  Rutherfoord did not present to or discuss with Glen any other options, supplements or

11  benefits. *Id.* at 29.

12      Each time Glen planned to go overseas on a mission, he contacted Defendants to

13  have the Policy "activated or "turned on" and paying the premiums Rutherfoord

14  determined based on Glen's anticipated salary, each time believing his DBA policy

15  would pay benefits to his estate in the event of his death while working overseas. *Id.* at

16  ¶ 30.  Glen renewed the policy for the period January 2012-January 2013, and on

17  September 5, 2012, Glen contacted Defendants asking to again "turn on" his DBA

18  insurance for a 54 day mission beginning September 7, 2012.  On September 8, 2012

19  Glen returned an executed "application" the Rutherfoord agent's request and providing

20  payment information for the premium of $3,560. *Id.* at ¶ 31, 34.  At no time during

21  these numerous exchanges in 2011 or 2012 did any agent or employee of Rutherfoord

22  advise Glen regarding the appropriateness of this particular DBA policy for his

23  specific needs, or advise him that it would not pay any benefits other than a portion of

24  anticipated funeral expenses, which were less than the policy premiums paid, in the

25  event of his death. *Id.* at 38.

26      While on his last mission overseas, Glen was killed by mortar fire while

27  defending the CIA Annex in Benghazi, Libya in the early morning of September 12,

28  2012. Glen's friend and teammate, Tyrone Woods, was also killed while defending the

1  Annex. *Id.* at 39, 44. On October 12, 2012, Plaintiff Sean Lake, as Executor of the

2  Glen Doherty's Estate, timely submitted a report of injury or death to Defendants, the

3  insurer and the United States Department of Labor. Six months later, Lake received

4  notice that only funeral expenses ($3000) would be paid to the Estate or Glen's heirs,

5  and denying any other payment made on account of Glen's death due to "no known

6  dependents." *Id.* at 46.

7       Plaintiffs brought this legal action against Defendants alleging causes of action

8  for Professional Negligence, Breach of Fiduciary Duty, False Advertising in Violation

9  of California Business and Professions Code Section 17500, and Unfair Competition in

10  Violation of California Business and Professions Code Section 17200.

## II.   LEGAL STANDARD

12       The standard of review on a motion to dismiss pursuant to 12(b)(6) was changed

13  in 2007 with the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S.

14  544 (2007).  While the Court in *Twombly* continued to recognize the notice pleading

15  requirement as set forth in Fed. R. Civ. P. 8(a), and therefore continued to hold that

16  specific facts need not be pled in the complaint, *Twombly* set a standard requiring that

17  a plaintiff need only have a "plausible" right to recovery, and that the causes of action

18  alleged must rise above mere speculation.  As the Supreme Court put it:

19
20       A claim has facial plausibility when the plaintiff pleads factual
     content that allows the court to draw the reasonable inference

21       that the defendant is liable for the misconduct alleged. The
     plausibility standard is not akin to a probability requirement,

22       but it asks for more than a sheer possibility that a defendant has
     acted unlawfully.
23

24  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  In considering a motion to dismiss, the

25  Court must accept all allegations in the complaint as true and draw all reasonable

26  inferences in favor of the plaintiff.  *Scheuer v. Rhodes*, 416 U.S. 232 (1974), overruled

27  on other grounds by *Davis v. Scherer*, 468 U.S. 183 (1984).  Additionally, upon

28  granting a motion to dismiss for failure to state a claim, the Court has discretion to

allow leave to amend the complaint pursuant to Fed. R. Civ. P. 15(a).  "Dismissal with

**4**

prejudice and without leave to amend is not appropriate unless it is clear . . . that the complaint could not be saved by amendment." *Eminence Capital, L.L.C. v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

As will be demonstrated more fully herein, Defendants' Motion fails to justify why Plaintiffs' Complaint should be dismissed with prejudice—a harsh and unnecessary result—when indeed there are numerous facts in support of [their] breach of fiduciary claim that could entitle [them] to relief. As the Court will see while looking at the Complaint as a whole, each of Plaintiffs' allegations provide Defendants with "a short and plain statement of the claims showing that the pleading is entitled to relief" under Fed. R. Civ. P. 8 (a)(2), that Plaintiffs' claims are not speculative and present a plausible right to recovery.

### III.   ARGUMENT

While not the general rule, California courts, among others, recognize that under certain circumstances, namely where there exists a special relationship between an insurer and the insured, heightened duties may exist. This is the case here. Defendants, however, fail to address this widely recognized exception. Their silence is telling, and Defendants' motion fails as a matter of law for the reasons more fully discussed below.

**A.   <u>An Insurance Broker Can Be Held to a Higher Duty Where Facts Indicate a Special Relationship.</u>**

Defendants argue that the duty of an insurance broker, *generally*, is to exercise reasonable care and skill in procuring the requested insurance. *Hydro-Mill Co., Inc. v. Hayward, Tilton & Rolapp Ins. Associates, Inc.*, 115 Cal. App. 4th 1145, 1158 (2004). Defendants' Motion at p. 5. Plaintiffs do not dispute this and, in fact, agree that this, *generally*,[1] is the rule, <u>absent a special relationship between the broker and the insured.</u>

---

[1] Although Plaintiffs' Opposition focuses on the "special relationship" exception to the general rule, it must be noted that the general rule itself is not as black and white as Defendants depict it; although a fiduciary duty owed by a broker/agent to an insured is concededly not a given, it has not been definitely ruled out. *Eddy v. Sharp*, 199 Cal.

1  *Fitzpatrick v. Hayes*, 57 Cal. App. 4th 916, 927 (1997) (discussed *infra*) (emphasis

2  added).

3      Courts around the country, including in California, have specifically recognized

4  exceptions where insurance brokers or agents can, or should, be held to a higher duty.

5  *Fitzpatrick v. Hayes*, 57 Cal. App. 4th 916, 923 (1997) (holding that, "as a general

6  proposition," an insurance [broker] does not have a duty to volunteer to an insured that

7  the latter should procure additional or different coverage.  The rule changes when there

8  are facts pointing to a "special relationship" between the broker and insured, which

9  could give rise to a plausible breach of fiduciary duty cause of action.)  *See also Sadler*

10  *v. Loomis*, 776 A.2d 25, 35 (Md. Ct. Spec. App. 2001) ("A 'special relationship'

11  within the insurance industry is an important concept.  It requires more than the

12  ordinary insurer-insured relationship.)

13      The court in *Fitzpatrick* laid out three scenarios where a special relationship may

14  arise: (1) where the insured requests or inquires about a particular type or extent of

15  coverage; (2) where the broker assumes an additional duty either by express agreement

16  or by "holding himself out" as having expertise in a given field of insurance being

17  sought by the insured; and/or (3) where the agent/broker misrepresents the nature,

18  extent, or scope of the coverage being offered or provided. *Fitzpatrick*, *supra*, at 927.

19

20  App. 3d 858, 865 (1988); *Hydro-Mill Co., Inc. v. Hayward, Tilton & Rolapp Ins.*
    *Associates, Inc.*, 115 Cal. App. 4th 1145, 1158 (2004) (holding that "[w]hether or not

21  the broker-insured relationship is a fiduciary one, a broker still has certain fiduciary

22  duties.")  *See also* Cal. Ins. Code 1733, which provides that premium payments
    received by insurance agents and brokers are held in a fiduciary capacity and triggers a

23  higher, fiduciary duty on agents and brokers, even if the receipt of payment itself is not

24  necessarily wrongful.  *Middlesex Ins. Co. v. Mann,* 124 Cal App 3d 558 (1981) (Under
    Ins. Code, §§ 1733, 1734, a civil remedy will lie for damages proximately resulting

25  from a licensee's breach of his fiduciary obligations, even though such statutory

26  provisions do not specify a civil remedy, since a civil remedy best effectuates the
    underlying legislative purpose).  Plaintiffs here pled that Glen made premium

27  payments directly to Rutherford. *See* Compl. at ¶¶ 27, 32, 34.

28

1    Here, Plaintiffs pled extensive facts supporting all three scenarios.

2        **1.     Glen Requested a Specific Type of Coverage**

3       In *Free v. Republic Ins. Co.* 8 Cal. App. 4th 1726 (1992), plaintiff-insured

4 sought insurance to protect against a "very specific eventuality"—the complete

5 destruction of his home.  Despite selling him an insurance policy, the defendant

6 insurance broker did not advise the insured about the two options that would have

7 covered him in the exact, unfortunate event he sough to protect against, but assured

8 him his coverage was sufficient.  The court found that because there were unique

9 circumstances, including an exchange between the insured and the broker about the

10 coverage provided, defendant insurance broker "must be deemed to have assumed

11 additional duties, which, if breached, could subject them to liability." *Id.* at 1730.

12       Here, Plaintiffs pled facts supporting a similar scenario.  Specifically, that Glen

13 sought a DBA insurance policy, mandated by the CIA, like that of his friend Tyrone

14 Woods, which would compensate him upon injury or, most importantly, take care of

15 his loved ones in the event of *one specific eventuality*—his death.  Compl. at ¶¶ 22-24.

16 Plaintiffs pled, upon information and belief, that Glen repeatedly communicated this to

17 the Rutherfoord brokers, and that each time he deployed overseas, he believed his

18 policy would meet his wishes and pay benefits to his estate in the event of his death

19 while serving overseas. *Id.* at ¶¶ 23-38.  Further, Plaintiffs believe that once they are

20 able to obtain a complete record of communication between Glen and Rutherfoord in

21 discovery, there will be numerous additional documents and communications that

22 further support this scenario, similar to *Free* wherein the court acknowledged that a

23 "special relationship" could arise between the broker and insured, giving rise to a

24 heightened duty and potential broker liability.

25       **2.     Rutherfoord Held Itself Out as Having Expertise in the Field of**
26              **Insurance Sought by Glen**

27       Beyond *Fitzpatrick*, several courts have addressed the scenario where an

28 insurance broker held itself out to be an expert in a particular field.  In *Kurtz, Richards,*
*Wilson & Co. v. Insurance Communications Marketing Corp.,* 12 Cal. App. 4th 1249

1   (1993), the plaintiff, in its quest for group medical, life, and accident insurance for its

2   employees, relied on the defendant broker "who held themselves out as expert brokers

3   and agents in the field." *Id.* at 1255.  There, the insured relied on the broker's stated

4   expertise on the Tax Equity Fiscal Responsibility Act ("TEFRA") in signing a TEFRA

5   certificate stating that it was not subject to Medicare, when in actuality it was, which

6   exposed them to liability thereafter.  The court held that "[a]n agent may assume

7   additional duties by . . . holding himself . . . out as having specific expertise" and noted

8   that the cross-complaint alleged facts "that if true would establish that they entered into

9   a relationship with [the plaintiff] . . . including a special duty assumed when they held

10  themselves out as experts on TEFRA." *Id.* at 1257.

11          As one appellate court put it, "[A special relationship] may be shown when an

12  insurance agent or broker holds himself or herself out as a highly skilled insurance

13  expert and the insured relies to his detriment on that expertise." *Sadler v. Loomis* 776

14  A.2d 25, 35 (Md. Ct. Spec. App. 2001). As the court in *Sadler* explained:

> It is the nature of the relationship, and not merely the number of
> years associated therewith, that triggers the duty to advise.
> Some of the factors relevant to developing entrustment between
> the insured and the insurer include: **exercising broad
> discretion to service the insured's needs; counseling the
> insured concerning specialized insurance coverage; holding
> oneself out as a highly-skilled insurance expert, coupled
> with the insured's reliance upon the expertise**...

21  *Id.* at 36 (emphasis added).

22          It is hard to imagine a case more aligned with this illustration of a "special

23  relationship" than the case at hand.  Plaintiffs' Complaint includes nine paragraphs full

24  of facts specifically describing how Rutherfoord markets its "**exclusive expertise**" in

25  DBA policies. *See generally* Compl. at ¶¶ 13-21.  Some examples include:

- that it is exclusive insurance broker for the CIA and Department of State
  dealing with DBA policies (Compl. at ¶ 13);
- that its knowledge of DBA policies and the claims process is so in-depth

that it maintains a "DBA Center for Excellence" (*Id.* at ¶¶ 16, 17);

- that its expertise and DBA services create a "one stop shop" for clients (*Id.* at ¶ 18);

- that it offers "innovative solutions" and "creative program designs" for government contractors (*Id.* at ¶¶ 17, 18, 21);

- that because of its in-depth knowledge of DBA policies, it has a "unique ability to identify and fill coverage gaps" (*Id.* at ¶16);

- that it has "world class staff," a "team of experts," a "global reach and 50 years of combined experience in this field" (*Id.* at 18, 19); and

- that its "Government Contractor Expertise" makes it "uniquely situated" to identify DBA exposures of government contractors serving overseas (*Id.* at ¶ 21).

Further, Plaintiffs' pled countless facts showing that despite their marketed services and expertise, Rutherfoord failed to assess Glen's specific needs, procure the kind of benefits he desired, to assess or fill his "coverage gaps," or provide any kind of "creative" or "innovative" solution to his insurance needs. *Id.* at ¶¶ 22-38, 45-48. In sum, as stated in Plaintiffs' Complaint, Glen was an unsophisticated party to the insurance transaction with Defendants and reasonably relied upon Defendants' represented expertise to his detriment. *Id.*

Plaintiffs further pled that at no point did Defendants, including any of the individual agents assisting Glen, ask questions or assess his individual circumstances, or inform him that his policy would not pay any benefits upon his death other than funeral expenses, which were less than the premiums paid for it. *Id.* at ¶ 38. (*See also Westrick v. State Farm Insurance,* 137 Cal. App. 3d 685, 691-692 (1982) (holding that unique circumstances including "disparity of knowledge" and "confusing conversations" may impose an affirmative duty of disclosure, or a duty to make further inquiry of the insured's circumstances or intentions). By holding itself out as having expertise in the field of DBA insurance, which Glen relied on to his and Plaintiffs'

detriment, a special relationship existed between Defendants and Glen.

### 3.   Defendants Misrepresented the Nature, Extent, or Scope of Coverage Being Offered and Provided

Other California cases have given color to the third exception outlined in *Fitzpatrick*. In *Paper Savers, Inc. v. Nacsa,* 51 Cal. App. 4th 1090 (1996), the appellate court reversed summary judgment for the defendants, holding that there were triable issues of fact as to whether the agent had "negligently represented the meaning and effect of the 'replacement cost coverage' endorsement . . . and thereby assumed a special duty to [the insured] to ensure it had the coverage it thought it had purchased." *Id.* at 1093, 1095. In so doing, the court helpfully organized much of the authority in this area into two parts, one being entitled "An Agent's General Duty of Care Does Not Include Responsibility for Ensuring the Insured Has Adequate Coverage to Protect Against all Eventualities" and the other being entitled "An Insurance Agent Can Assume a Special Duty Toward His Insured by Misrepresenting Policy Terms." *Id.* at 1096. Because what was involved in *Paper Savers* was allegedly an affirmative misrepresentation concerning the quality and scope of the insurance being provided, the court had no difficulty in holding that that case came within the authority of the latter part.

Here too, Plaintiffs have alleged that Defendants misrepresented both the insurance offered to the public, including Glen, as well as the insurance sold to Glen. Not only do Plaintiffs plead extensive facts, as outlined above, showing misrepresentations through their extensive marketing—i.e., promoting their ability to provide "individualized," "creative," and "innovative" DBA solutions for the insured—but Plaintiffs also pled causes of action for False Advertising and Unfair Competition under California Business and Professions Code §§ 17200, 17500 et seq.. Compl. at ¶¶ 65-77. Indeed, Plaintiffs pled facts supporting all three scenarios indicating a "special relationship" between Glen and Rutherfoord. Because numerous courts in California have recognized that, where a special relationship exists between

the broker and the insured, the broker can be held to a higher standard of care such as a fiduciary duty, this cause of action should not be summarily dismissed.  Rather, Plaintiffs should be afforded the opportunity to pursue this claim, including further facts supporting it in discovery, and allow the jury[2] to evaluate the extent of the "special relationship" between Rutherfoord and Glen and the liability of Defendants.

## B.  Plaintiffs Have Pled More-Than-Sufficient Facts upon Which Relief Can Be Granted.

Defendants' alternative argument that, should the Court find a cognizable legal theory, Plaintiffs failed to plead sufficient facts to support a claim for breach of fiduciary duty also fails for the reasons set forth above.  Plaintiffs pled more than 28 paragraphs full of facts alone illustrating a "special relationship" between Glen and Rutherfood, giving rise to a heightened duty beyond that in play for professional negligence.  While Defendants attempt to compartmentalize Plaintiffs' pleading in order to support this argument, Defendants miss the mark.  In evaluating a motion to dismiss for failure to state a claim, the Court should look at the Complaint as a whole, not merely the allegations listed under the claim at issue, and accept them as true.  *See Kurtz,* 12 Cal. App. 4th 1249, 1256 (1993)("we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context").

Indeed, Plaintiffs' Second Cause of Action for breach of fiduciary incorporates by reference each and every allegation contained in paragraphs 1 through 57.  Compl. at ¶ 58.  Accordingly, Defendants' alternative theory for dismissing Plaintiffs' cause of action for breach of fiduciary duty also fails.  In the event, however, the Court believes

---

[2] *See, i.e., Peter v. Schumacher Enterprises, Inc.,* 22 P.3d 481 (Alaska 2001) (where insured alleged the broker failed to advise the insured that it could and should purchase higher limits, the court found that there was a question of fact as to whether a special relationship existed that created a duty to advise and, therefore, remanded the case for a resolution of this issue by the trier of fact.  *See also American Building Supply Corp. v. Petrocelli Group, Inc.,* No. 188, 2012 N.Y. LEXIS 3476 (N.Y. 2012) (finding a question of fact as to whether the insured made a specific request for the broker to procure coverage or advise the insured of its inability to do so because "an insured should have the right to 'look to the expertise of its broker with respect to insurance matters.'"  *Id.* at 7-8.

this cause of action is too duplicative of its professional negligence cause of action, such a pleading deficiency is curable, and Plaintiffs ask for leave to replead.

**C.     Plaintiffs Do Not Oppose Defendants' Motion to Strike Prayer For Attorneys' Fees**

By this non-opposition, Plaintiffs hereby agree to withdraw their prayer for attorneys' fees.

## IV.     CONCLUSION

For all the foregoing reasons, Plaintiffs Sean Lake, individually and as executor to the Estate of Glen Doherty; Kate Quigley; Barbara Doherty; and Greg Doherty request that the Court deny Defendants' Motion to Dismiss Claim for Breach of Fiduciary Duty.  In the event the Court is inclined to grant Defendants' Motion, Plaintiffs respectfully request that they be afforded the opportunity to amend their Complaint to cure any deficiencies found by the Court.

K&L GATES LLP

Dated:  November 7, 2014           By:   s/Caitlin C. Blanche
                                         Michael D. Mortenson
                                         Caitlin C. Blanche
                                         Attorneys for Plaintiffs